UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Baboucar Taal

    v.                                        Civil No. 16-cv-231-LM
                                          Opinion No. 2017 DNH 025

St. Mary's Bank, Ronald
Covey, Gregory Uliasz,
and Gillian Abramson


**O R D E R**

Appearing pro se, Baboucar Taal asserts six claims against four defendants: St. Mary's Bank ("SMB"); SMB's president, Ronald Covey; SMB's attorney, Gregory Uliasz; and Judge Gillian Abramson, who has presided over a case Taal brought in the New Hampshire Superior Court. Under the aegis of 42 U.S.C. § 1983, Taal asserts that defendants violated his rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution (Counts I and III), and that they conspired to violate his constitutional rights (Counts II and IV).[1] In his remaining two claims (Counts V and VI), he asserts that defendants are liable to him for Racketeer Influenced and Corrupt Organization ("RICO") violations. See 18 U.S.C. § 1962.

---

[1] While there is a less than perfect correspondence between the headings of plaintiff's counts and the text that follows them, the headings of Counts I and II refer to the right to an impartial tribunal, and the headings of Counts III and IV refer to the right to counsel.

Before the court are two motions to dismiss, one filed by Judge Abramson, the other filed by SMB, Covey, and Uliasz (hereinafter "the SMB defendants"). For the reasons that follow, those two motions to dismiss are both granted.

## I. Background

The facts recited in this section are drawn largely from Judge DiClerico's January 20, 2014, order on preliminary review in <u>Taal v. Uliasz</u>, No. 13-cv-545-JD, a case that Taal brought in this court several years ago.[2]

Taal and his wife, Guylaine, once received a loan from SMB that was secured by a mortgage. They have also received other loans from SMB, including at least one that was unsecured, and have had other accounts with SMB. In 2009, SMB received a judgment against Taal in an action in the Merrimack District Court to collect an unsecured debt. Thereafter, Taal surrendered a recreational vehicle to SMB, which the bank was supposed to sell to satisfy its judgment. Subsequently, Taal sued SMB in the Hillsborough County Superior Court. In that action, 11-C-741, Taal claimed, among other things, that SMB had not disposed of the RV in a commercially reasonable manner.

---

[2] Judge DiClerico's slip opinion in 13-cv-545-JD may be found in the docket of this case. <u>See</u> Defs.' Mem. of Law, Ex. E (doc. no. 24-6).

Judge Abramson, a defendant in this case, dismissed 11-C-741 on res judicata grounds. And, in her order of dismissal, she

> extended a temporary restraining order and preliminary injunction . . . against Taal which enjoined Taal from contacting [SMB] employees and agents directly, rather than through counsel, and further enjoined him from harassing and intimidating certain individuals, including Uliasz's spouse.

Taal, slip op. at 4. Taal appealed the order of dismissal to the New Hampshire Supreme Court ("NHSC"). The NHSC reversed the dismissal, and remanded, but it also affirmed Judge Abramson's extension of the injunction against Taal.

On remand, Taal moved for the recusal of Judge Abramson. She denied his motion. Then, when Taal failed to appear at a final trial management conference and failed to file a pretrial statement, Judge Abramson dismissed 11-C-741 again, in an order dated April 2, 2013.

Later in 2013, after Taal contacted various SMB employees, SMB moved for contempt in 11-C-741. This is what happened next:

> On October 18, 2013, the superior court found that Taal had violated the [injunction against contacting SMB employees], which remained in effect despite the dismissal of Taal's case, by contacting Ronald Covey, the CEO of [SMB], and accusing [SMB] of several violations of the law. The court ordered Taal to pay [SMB] $1,825 in attorneys' fees incurred in filing the motion for contempt . . . and in attending the hearing. After Taal failed to pay the fees, the court scheduled a show cause hearing to address Taal's failure to obey the court order, which [was] scheduled for January 15, 2014.

3

Taal, slip op. at 6. After that hearing was scheduled, SMB filed a second motion for contempt.

"On December 20, 2013, apparently in response to [SMB]'s two motions for contempt, Taal filed [an] action against Uliasz and the firm for which he works." Taal, slip op. at 7. That action was Judge DiClerico's case, 13-cv-545-JD. Then:

> On December 30, 2013, Uliasz, on behalf of [SMB], mailed Guylaine [Taal] a notice of mortgage foreclosure sale, which sale [was] scheduled to occur on January 31, 2014. On January 3, 2014, Taal filed a motion for an emergency preliminary injunction [in 13-cv-545-JD], seeking to enjoin the foreclosure.

Id.

On preliminary review, Judge DiClerico dismissed Taal's case, explaining that due to the pendency of Taal's state court action, i.e., the hearing in 11-C-741 that was scheduled for January 15, dismissal was required by the Younger abstention doctrine. See Younger v. Harris, 401 U.S. 37, 43-44 (1971). And, because he was dismissing Taal's case, Judge DiClerico also denied Taal's request for an injunction barring the foreclosure sale. In his complaint, Taal alleges that the foreclosure ultimately took place.

Returning to Taal's litigation related to 11-C-741, he appealed the superior court's finding that he was in contempt of the injunction barring contact with SMB employees. The NHSC affirmed, and in so doing, rejected Taal's claim that Judge

4

Abramson had erred by declining to recuse herself from 11-C-741.

In April 2016, Taal received notice of a hearing in 11-C-741, scheduled for June 13, 2016. The purpose of that hearing was for Taal to show cause why he should not be held in contempt for failing to pay SMB the $1,825 that he had been ordered to pay in October 2013. On June 7, 2016, one week before the show cause hearing in 11-C-741, Taal filed the verified complaint that initiated this case. The general thrust of plaintiff's claims is that he has been the victim of various unlawful acts perpetrated by all four defendants, including Judge Abramson, acting in concert. A primary factual focus of plaintiff's complaint is the foreclosure of his mortgage, but the complaint also refers to one or more superior court rulings that were made in the run-up to the June 13, 2016, hearing. See Compl. (doc. no. 1) 7, 11. In his objections to both of the pending motions to dismiss, plaintiff makes it clear that in this suit, he identifies the superior court's order that he pay SMB $1,825 in attorneys' fees as one incident of defendants' conspiracy against him. See Pl.'s Mem. of Law (doc. no. 25-1) ¶¶ 5, 8, 10; Pl.'s Obj. (doc. no. 38) ¶¶ 4.iii, 5. As the court has noted, Taal's failure to comply with that order was the subject of the June 13 show cause hearing.

## II. Discussion

In this section, the court considers, in turn, each of the two pending motions to dismiss, beginning with the one filed by Judge Abramson.

### A. Judge Abramson's Motion to Dismiss

In her motion to dismiss, Judge Abramson identifies three grounds for dismissal: (1) Eleventh Amendment sovereign immunity; (2) judicial immunity; and (3) failure to state a claim upon which relief can be granted.  Judicial immunity entitles Judge Abramson to the dismissal of Taal's claims against her.

Judges have "absolute immunity from civil liability for any normal and routine judicial act." Cok v. Cosentino, 876 F.2d 1, 2 (1st Cir. 1989) (citing Stump v. Sparkman, 435 U.S. 349, 356-57 (1978)).  Moreover:

> This immunity applies no matter how erroneous the act may have been, how injurious its consequences, how informal the proceeding, or how malicious the motive. Cleavinger v. Saxner, 474 U.S. 193, 199–200 (1985). Only judicial actions taken in the clear absence of all jurisdiction will deprive a judge of absolute immunity. Stump, 435 U.S. at 357; Sullivan v. Kelleher, 405 F.2d 486, 487 (1st Cir. 1968).

Cok, 876 F.2d at 2 (parallel citations omitted); see also Pierson v. Ray, 386 U.S. 547, 554 (1967) ("[t]his immunity applies even when the judge is accused of acting maliciously and corruptly").  As the Supreme Court has explained:

6

> It is a judge's duty to decide all cases within his [or her] jurisdiction that are brought before him [or her], including controversial cases that arouse the most intense feelings in the litigants.  His [or her] errors may be corrected on appeal, but he [or she] should not have to fear that unsatisfied litigants may hound him [or her] with litigation charging malice or corruption.  Imposing such a burden on judges would contribute not to principled and fearless decision-making but to intimidation.

Pierson, 386 U.S. at 554.

Here, even when plaintiff's complaint is construed liberally, see Erickson v. Pardus, 551 U.S. 89, 94 (2007) (directing courts to construe pro se pleadings liberally), and even when the court accepts all of plaintiff's factual allegations as true and draws all reasonable inferences in his favor, see Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71 (1st Cir. 2014), there are no facts alleged in Taal's complaint that, if true, would strip Judge Abramson of judicial immunity.  To be sure, Taal alleges that Judge Abramson engaged in a host of unlawful acts.  And he plainly alleges a corrupt, malicious motive.  But, he alleges no facts showing that Judge Abramson acted in a clear absence of all jurisdiction, and no facts that would support a reasonable inference to that effect.  Thus, Judge Abramson is entitled to judicial immunity.  That, in turn, entitles her to the dismissal of Taal's claims against her.

### B. The SMB Defendants' Motion to Dismiss

In their motion to dismiss, the SMB defendants identify four grounds for the relief they seek: (1) the Younger abstention doctrine; (2) the Rooker-Feldman doctrine;[3] (3) Rule 12(b)(6) of the Federal Rules of Civil Procedure, i.e., failure to state a claim upon which relief can be granted; and (4) expiration of the statute of limitations.  Just as Judge DiClerico relied upon the Younger abstention doctrine to dismiss 13-cv-545-JD, so too does this court rely on that doctrine to dismiss Taal's claims against the SMB defendants.

Younger abstention is a doctrine that can, under some circumstances, require a federal court to "refrain from interfering with certain state proceedings." Sirva Relocation, LLC v. Richie, 794 F.3d 185, 189 (1st Cir. 2015) (citing Younger, 401 U.S. at 43-45).  In Sirva, the court of appeals outlined a "three-step approach to Younger abstention." 794 F.3d at 192.  Under that approach, a court must first determine whether the state court proceeding at issue is the type of

---

[3] "The Rooker-Feldman doctrine precludes 'the losing party in state court [from filing] suit in federal court after the state proceedings [have] ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment.'" Coggeshall v. Mass. Bd. of Reg. of Psychologists, 604 F.3d 658, 663 (1st Cir. 2010) (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 291 (2005)); see also D.C. Court of Appeals v. Feldman, 460 U.S. 462, 482 (1983); Rooker v. Fid. Tr. Co., 263 U.S. 413, 416 (1923)).

proceeding that triggers Younger abstention. Regarding that issue, the Supreme Court has

> held that only three types of state proceedings trigger Younger abstention: (i) criminal prosecutions, (ii) "civil proceedings that are akin to criminal prosecutions," and (iii) proceedings "that implicate a State's interest in enforcing the orders and judgments of its courts."

Id. (quoting Sprint Commc'ns, Inc. v. Jacobs, 134 S. Ct. 584, 588 (2013)). If the state proceeding falls within one of the three categories described above, then the court must take the next step and determine whether the so-called "Middlesex factors" support abstention.

> In Middlesex, the Court . . . explained that a federal court must abstain when there is an ongoing state proceeding (judicial in nature), which implicates important state interests and provides an adequate opportunity to raise federal defenses.

Sirva, 794 F.3d at 192 (citing Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982)). Moreover, the Middlesex factors "all must be assessed as of the date when the federal complaint is filed." Coggeshall v. Mass. Bd. of Reg. of Psychologists, 604 F.3d 658, 664 (1st Cir. 2010) (citing Bettencourt v. Bd. of Reg. in Med., 904 F.2d 772, 777 (1st Cir. 1990)). Finally, if the first two "steps leave the case on track for abstention, the court must take the third step and determine whether any of the . . . exceptions to the Younger doctrine apply." Sirva, 794 F.3d at 193.

The question in this case is whether abstention from reaching the merits of Taal's claims is required by the fact that when Taal filed this action, the superior court had yet to rule on the question of whether he was in contempt of court for failing to comply with its previous order that he pay SMB $1,825 in attorneys' fees. Based upon the analytical framework described in Sirva, abstention is required.

To begin, the show cause hearing that had yet to take place when Taal filed this action plainly falls within the Younger taxonomy. In 13-cv-545-JD, Judge DiClerico ruled that an upcoming show cause hearing in 11-C-741, that the state court had scheduled to address Taal's failure to pay SMB $1,825 in attorneys' fees, was a state judicial proceeding for the purpose of Younger abstention. Moving ahead in time, the subject of the hearing in 11-C-741 that was scheduled for one week after Taal filed this suit was also Taal's failure to pay SMB the $1,825 in attorneys' fees that he had been ordered to pay. If the pending hearing in 13-cv-545-JD was a state court judicial proceeding for the purposes of Younger abstention, then the pending hearing in this case must also satisfy the first step of the Sirva approach. Indeed, it seems self-evident that a hearing at which Taal was to show cause why he should not be held in contempt for disobeying a court order implicated the State of New Hampshire's interest in enforcing the orders of its courts. See Sirva, 794

F.3d at 192. Thus, the state court proceeding at issue here falls neatly into the third category of the Younger taxonomy.

Second, the Middlesex factors all counsel in favor of abstention. As the court has already explained, the June 13, 2016, show cause hearing in 11-C-741 was a "state proceeding (judicial in nature)," Sirva, 794 F.3d at 192, and the date of that hearing made Taal's state court proceeding ongoing on June 7, when Taal filed this action. Regarding the importance of the state interest implicated by the show cause hearing in 11-C-741, "[a] State's interest in the contempt process, through which it vindicates the regular operation of its judicial system . . . is surely an important interest." Juidice v. Vail, 430 U.S. 327, 335 (1977). Moreover, the Juidice court held that a state's interest in its contempt process is not just important; it is important enough to justify Younger abstention. See id. As for the final Middlesex factor, Judge DiClerico relied upon Juidice, 430 U.S. 337 & n.14, for the proposition that the state court show cause hearing that was pending when Taal filed 13-cv-545-JD would provide him "with the opportunity to make his constitutional argument." Taal, slip op. at 11. Given the congruity between the show cause hearing at issue in 13-cv-545-JD and the one in this case, Judge DiClerico's reasoning applies with full force to this case.

11

That leaves the final Sirva step, considering the handful of exceptions to the Younger doctrine that the Supreme Court has recognized. As the Sirva court explained:

> Abstention is inappropriate, for example, when a state proceeding is brought in bad faith, that is, for the purpose of harassment. See Younger, 401 U.S. at 53-54. So, too, a federal court need not stay its hand if the state forum provides inadequate protection of federal rights. See Gibson v. Berryhill, 411 U.S. 564, 575, 578-79 (1973). Abstention is likewise inappropriate when a state statute is "flagrantly and patently violative of express constitutional prohibitions." Younger, 401 U.S. at 53 (quoting Watson v. Buck, 313 U.S. 387, 402 (1941)).

794 F.3d 192 (parallel citations omitted). In this case, there is not even a hint of a reason to believe that any of the exceptions identified in Sirva might apply.

Having proceeded through all three steps of the Sirva approach to Younger abstention, the court concludes that abstention is warranted in this case. In reaching that conclusion, the court acknowledges that June 13, 2016, the date of the show cause hearing that was pending when Taal filed this action, has come and gone. And, indeed, Judge Ruoff held the June 13 hearing and issued an order. But, as the court has noted, the proper frame of reference for applying the principles of Younger abstention is the state of affairs as of the date on which the federal action is filed. See Coggeshall, 604 F.3d at 664. Because the circumstances of this case fit within the Sirva paradigm when the case was filed, the court must abstain.

12

Abstention, in turn, compels the court to grant the motion to dismiss filed by the SMB defendants. See Sirva, 794 F.3d at 200 (affirming district court's dismissal when abstention was appropriate).[4] Because the SMB defendants' invocation of Younger abstention entitles them to the dismissal of Taal's complaint, the court need not reach the other grounds for dismissal that they raise in their motion to dismiss.

### C. The Four Remaining Motions

Several loose ends remain, in the form of four additional pending motions. First, plaintiff moves the court to allow him to bring a telephone to court to use for research during the pretrial conference, any subsequent hearings, and the trial of this matter. Because this order dismisses all of plaintiff's claims, his motion to bring a phone to court is denied as moot.

Also pending are Taal's motions for sanctions, against Kathleen Marquis, Rita Emerson-Lamont, and Donald St. Germaine, for failing to avail themselves for depositions. However, in an order dated August 18, 2016, the Magistrate Judge granted motions to quash the deposition subpoenas that Taal issued to Marquis, Emerson-Lamont, and St. Germaine, on grounds that they

---

[4] In addition, while Judge Abramson is entitled to dismissal on the basis of judicial immunity, it seems clear that the foregoing abstention analysis would apply equally to Taal's claims against Judge Abramson, given that Taal asserts all six of his claims against all four defendants, without drawing any meaningful distinctions between them.

were issued prematurely. If Taal's subpoenas were issued prematurely then, necessarily, Marquis, Emerson-Lamont, and St. Germaine cannot be sanctioned for failing to attend the depositions noticed in those subpoenas. Accordingly, Taal's three motions for sanctions are all denied.

### IV. Conclusion

For the reasons detailed above, the motions to dismiss filed by Judge Abramson, document no. 18, and by the SMB defendants, document no. 24, are both granted. Plaintiff's motion to bring a mobile telephone to court, document no. 36, is denied as moot. And plaintiff's three motions for sanctions, documents 19, 20, and 26, are all denied. Based on the foregoing, the clerk shall enter judgment accordingly and close this case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

February 14, 2017

cc: Jay M Niederman, Esq.
    Ellen M. Rogeres, Esq.
    Nancy J. Smith, Esq.
    Baboucar Taal, pro se
    Gregory T. Uliasz, Esq.